

# Missouri Court of Appeals

### Southern District

In Division

IN INTEREST OF Z.S.C. and H.E.C.,   )
GREENE COUNTY JUVENILE OFFICE,   )
                                   )   No. SD37583 and SD37584
            Respondent,            )        Consolidated
                                   )
      vs.                          )    FILED: February 1, 2023
                                   )
J.E.,                              )
                                   )
            Appellant.             )

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Calvin R. Holden, Judge

**<u>AFFIRMED</u>.**

J.A.E. ("Father") appeals from the circuit court's judgments terminating the parental

rights of Father and H.E.C. ("Mother") (collectively referred to as "parents") to Z.S.C. ("Son")

and H.E.C. ("Daughter") (collectively referred to as "children").[1]  The court terminated Father's

parental rights, as to both children, upon the statutory grounds of neglect, *see* section

211.447.5(2), and failure to rectify, *see* section 211.447.5(3), and, as to Z.S.C. only, upon the

statutory ground of parental unfitness, *see* section 211.447.5(5).[2]  On appeal, Father does not

---

[1] A judgment terminating Father's parental rights was filed in each child's individual case.  Father appropriately filed a notice of appeal in each case, which, accordingly, resulted in two appeals.  By written order, this court consolidated those appeals for all purposes.  The parental rights of Mother, which were also terminated by the judgments, are not at issue in this appeal.
[2] All statutory references are to RSMo Cum.Supp. 2021.

contest the application of any of these statutory grounds but contends that the circuit court abused its discretion in determining that termination was in the children's best interest.  *See* section 211.447.7.  Finding no such abuse of discretion, we affirm.

## Applicable Principles of Review and Governing Law

Section 211.447.6 generally provides that a "juvenile court may terminate the rights of a parent to a child . . . if the court finds that the termination is in the best interest of the child and when it appears by clear, cogent and convincing evidence that grounds exist for termination pursuant to subsection 2, 4 or 5 of this section."  There are seven enumerated best interest factors that are statutorily required to be included in a judgment "[w]hen considering whether to terminate the parent-child relationship pursuant to subsection 2 or 4 of this section or subdivision (1), (2), or (3) of subsection 5":

> (1) The emotional ties to the birth parent;
>
> (2) The extent to which the parent has maintained regular visitation or other contact with the child;
>
> (3) The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so including the time that the child is in the custody of the division or other child-placing agency;
>
> (4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;
>
> (5) The parent's disinterest in or lack of commitment to the child;
>
> (6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights;
>
> (7) Deliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm.

Section 211.447.7(1)-(7).

2

We review a circuit court's best interest determination for an abuse of discretion. *In re P.L.O.*, 131 S.W.3d 782, 789 (Mo. banc 2004). "An abuse of discretion is committed if the trial court's decision defies logic under the circumstances, is sufficiently arbitrary and unreasonable to shock the conscience of the court, and exhibits a dearth of careful consideration." *In re K.L.W.*, 131 S.W.3d 400, 404 (Mo.App. 2004) (internal quotation marks omitted). The evidence and permissible inferences drawn from the evidence are viewed in the light most favorable to the judgment. *Interest of C.E.B.*, 565 S.W.3d 207, 211 (Mo.App. 2018).

## Factual and Procedural Background

Son was born on December 26, 2016, and, on January 4, 2018, was placed into the temporary legal custody of the Children's Division of the Department of Social Services ("Children's Division") on allegations of neglect against Mother relating to lack of supervision, lack of food, and exposure to drug use. While Son was still in protective custody, Daughter was born on June 25, 2019, and, on August 13, 2020, was also placed in the temporary legal custody of the Children's Division on allegations of neglect. Father and Mother were in an "on-and-off relationship" and, initially, Father disputed paternity. Ultimately, testing revealed that he was the father of the children.

On September 14, 2021, the Juvenile Officer filed petitions to terminate the parents' parental rights to the children. Following a hearing on March 24, 2022, the circuit court issued its judgments, finding that the parents are presumed to be unfit parties to the parent-child relationship with Son under section 211.447.5(5)(b)e because Son had been in foster care for at least fifteen of the previous twenty-two months; the children have been neglected as provided by sections 211.447.5(2)(a), (b), and (d); the parents have failed to rectify the conditions that formed the basis of the neglect proceedings as provided in sections 211.447.5(3)(a)-(d); and termination

3

of the parents' parental rights was in the children's best interest as provided by sections 211.447.6 and 211.447.7(1)-(7).

Although Father does not challenge the trial court's factual findings as to the parental unfitness, neglect, and failure to rectify statutory grounds supporting the termination of his parental rights to the children, for context and clarity, we briefly summarize those findings as follows.

Father had been engaging in methamphetamine use, and had been diagnosed with several mental conditions, including stimulant use disorder, anxiety disorder, persistent depressive disorder, attention deficit hyperactivity disorder, and autism spectrum disorder. At the time of trial, however, Father had neither engaged in treatment or followed any of his medical providers' recommendations, engaged in the services offered by his case manager, completed substance abuse treatment, nor had he shown any ability to maintain sobriety. Father's substance abuse prevented Father from maintaining employment, maintaining stable housing, or providing for the children's needs.

With those unchallenged factual circumstances established, we turn to the basis for Father's claim on appeal—the circuit court's best interest determination. In addressing the children's best interest, the court made findings addressing each of the seven factors listed under section 211.447.7 that are nearly identical across the two judgments. We quote those findings verbatim, *infra*. Although the parental rights of Mother are not at issue in this appeal, we include the findings addressing Mother's conduct because those are occasionally intertwined with the findings addressing Father's conduct.

The circuit court's best interest findings under section 211.447.7 were provided as follows:

4

[1] The emotional ties to the birth parent: The evidence presented established that [Son] chooses not to talk about the mother and father when he meets with his therapist. [Son] refers to his foster parents as mom and dad and has a very strong bond with his sister. [As stated in the judgment addressing Daughter: "The evidence established that [Daughter] has a very strong bond with her brother, but there was little evidence of a bond with either the mother or father."]

[2] The extent to which the parent has maintained regular visitation or other contact with the child: The evidence presented that at times the mother was very consistent with visits, but that in the time leading up to hearing she become [sic] very inconsistent and subsequently her visits were stopped due to the effect [that] cancelations were having on the children. *The father was consistent with his visits, but was not always appropriate in his behavior, at times neglecting [Daughter] to focus on [Son] and at other times having inappropriate conversations in the presence of the children.*

[3] The extent of payment by parent for the cost of care and maintenance of the minor child when financially able to do so including the time that the minor child was in the custody of the Division or other child-placing agency: The parents provided some in kind items at visits, but neither was providing any financial support for months prior to hearing. The father [has] not provided any financial support in more than three years.

[4] *Additional services would not be likely to bring about a lasting parental adjustment so as to enable a return of the [children] to a parent within an ascertainable period of time[.] The evidence presented established that the mother and father have been provided referrals for services, but the father refused to engage with any providers and the mother had worked with services, but stopped doing so months before hearing. The case worker testified that there are no additional referrals she can provide in addition to those she has already provided.*

[5] *The mother and father have demonstrated a disinterest in or lack of commitment to the [children] in that the parents have failed to take the necessary steps to address their substance abuse, the father has not completed parenting classes, [and] the parents are not engaged in individual or couples therapy to address their codependent and abusive relationship. Neither parent has shown a willingness to think about the needs of the [children] before addressing their own wants.*

[6] The conviction of the parent of a felony offense that the Court finds is of such a nature that the child will be deprived of a stable home for a period of years with the understanding the incarceration, standing alone, is not a proper ground for termination of parental rights: There was no evidence presented of such a conviction.

5

[7] Deliberate acts of the parent or acts of another, of which the parent knew or should have known, that subjected the child to a substantial risk of physical or mental harm:  [Daughter] ingested the mother's suboxone while in the mother's care.  [Daughter] had to be given Narcan and taken to the hospital by ambulance. The mother waited for more than an hour after finding out about the incident before she called for help.

(Emphasis added.)

In his sole point on appeal, Father challenges the circuit court's determination that termination of Father's parental rights was in the children's best interest.  Father does not, however, claim any error with regard to the court's findings under factors (1), (3), (6), and (7) and concedes that some of those findings favor termination.  Father claims only that certain findings provided under factors (2), (4), and (5), indicated in italics, *supra*, were erroneous. Father's arguments offered in support of his claim are not persuasive.

## Discussion

Father first challenges the court's findings addressing his visits with the children, which found that "[t]he father was consistent with his visits, but was not always appropriate in his behavior, at times neglecting [Daughter] to focus on [Son] and at other times having inappropriate conversations in the presence of the children."  Father argues that under section 211.447.7(2), the court's finding that he  "was consistent with his visits" is appropriate, but the court erred by including the additional findings regarding his behavior at those visits.  Father asserts those findings were "outside the scope" of the statutory language and section 211.447.7(2), "does not include a calculation as to the quality of those visits."

This argument fails because it misunderstands what is required in a "best interest" determination.  The section 211.447.7 factors "are merely an aid to the 'best interests' determination." *In re G.G.B.*, 394 S.W.3d 457, 472 (Mo.App. 2013).  Moreover, "[t]here is no requirement, statutory or otherwise, that all seven of these factors must be negated before

6

termination can take place; likewise, there is no minimum number of negative factors necessary for termination." ***In re C.A.M.***, 282 S.W.3d 398, 409 (Mo.App. 2009). Rather, determining a child's best interest is a subjective assessment based on *the totality of the circumstances*. ***Id.*** Thus, contrary to Father's argument otherwise, while the circuit court was required to make findings addressing the section 211.447.7 factors to terminate Father's parental rights under sections 211.447.5(2) or (3), nothing in the statute prohibited the court from making any additional findings, based upon the totality of the circumstances, that were relevant to its best interest determination.

Father's second and final argument does not fare any better than his first, as he again merely alleges the court erred in its assessment of two of the section 211.447.7 factors. Father challenges the circuit court's findings under factor (4) that "[a]dditional services would not be likely to bring about a lasting parental adjustment so as to enable a return of the [children] to a parent within an ascertainable period of time[.]" Father concedes "that the testimony viewed in the light most favorable to the verdict indicates that [he] refused what services were available . . . ." Yet, ignoring the aforementioned concession, Father argues that "those services were not offered until much later in this case." Specifically, Father states that "[t]he Greene County Juvenile Office and Children's Division . . . delayed the finding of paternity and the ordering of a treatment plan for months"—"[n]ine (9) months in the case of [Son] and six (6) months in the case of [Daughter]." Without citation to any legal authority supporting the proposition, Father claims:

> This is a substantial period of time in which the system, quite frankly, failed the father. Those are months of time in which he could have been offered services but was not. In light of the failure to provide services during extended periods of time, such a finding that no further services could be offered to the father is questionable. Counsel would argue that such … a finding shocks the sense of justice and respectfully is an abuse of the trial court's discretion.

Father proceeds to then challenge the court's finding under factor (5) that "father [has] demonstrated a disinterest in or lack of commitment to the [children] . . ." by proffering the same argument as with factor (4). Father again concedes "that the testimony indicates that the father refused services, and that this could be taken as an indication of disinterest." Nevertheless, Father argues that "the context of that refusal, after failing to be made a party for nine (9) months in one case and six (6) months in the other is important to this analysis."

Essentially, Father argues that this Court should reweigh the evidence under factors (4) and (5). This Court, however, defers to the circuit court's "ability to determine the witnesses' credibility and to choose between conflicting evidence." *Interest of C.E.B.*, 565 S.W.3d 207, 218 (Mo.App. 2018). It is the circuit court's duty "to weigh the evidence presented relating to best interest, and this Court will not reweigh that evidence." *Id.* Father's argument, which is nothing more than an invitation to disregard our standard of review, therefore fails.

In conclusion, Father had "the burden of showing trial court error, and we will affirm unless appellant meets that burden." *Matter of M.L.T.*, 468 S.W.3d 377, 381 (Mo.App. 2015). Father's point and supporting arguments, however, fail to address the challenged best interest findings in the broader context of the totality of the circumstances, viewing the evidence of those circumstances in the light most favorable to the circuit court's findings, all of which is required by our standard of review. "Father's failure to consider our standard of review makes his challenge to the trial court's best-interest findings of 'no analytical or persuasive value.'" *Id.* at 219-20 (Mo.App. 2018) (quoting *J.A.R. v. D.G.R.*, 426 S.W.3d 624, 632 (Mo. banc 2014)). As such, Father could not and did not sustain his burden to demonstrate that the circuit court's best interest finding was clearly against the logic of the circumstances and was so arbitrary and unreasonable as to shock the conscience of the court and indicate a lack of careful consideration. Point denied.

**<u>Decision</u>**

The circuit court's judgment is affirmed.

BECKY J. W. BORTHWICK, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

JACK A. L. GOODMAN, C. J. – CONCURS